IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SCOTT ALLEN WALKER                                                    PLAINTIFF

v.                                          Civil No. 5:20-cv-05133-PKH-MEF

DETECTIVE FAUBUS (Sex Offender
Registration Detective, Springdale Police
Department); DETECTIVE WRIGHT;
DETECTIVE WILSON; and SPRINGDALE
POLICE DEPARTMENT                                                    DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Plaintiff, Scott Allen Walker, originally filed this *pro se* action on July 30, 2020, pursuant to 42 U.S.C. § 1983. (ECF No. 1). Plaintiff's application to proceed *in forma pauperis* was granted on August 3, 2020. (ECF No. 5). Following the filing of an Amended Complaint (ECF No. 7) on August 12, 2020, this case was dismissed without prejudice on August 26, 2020. (ECF No. 8). The Court found that because Plaintiff's claims involved an ongoing state judicial criminal proceeding against Plaintiff, the *Younger* abstention doctrine favored dismissal. (ECF No. 8). The case was reopened on November 18, 2020, and a Second Amended Complaint was filed on December 15, 2020. (ECF Nos. 10, 12).

Before the Court are two motions: Plaintiff's Motion for Summary Judgment (ECF No. 25) filed June 10, 2021, and the Defendants' Motion for Summary Judgment (ECF Nos. 26, 27, 28) filed on June 18, 2021. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable P. K. Holmes, III, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

## I.   BACKGROUND

Plaintiff's Second Amended Complaint sets forth three claims. Plaintiff's first claim is for

"false arrest / false imprisonment." Plaintiff names Detective Faubus and Detective Wright, in both their official and personal capacities, as Defendants to this claim. (ECF No. 12 at 4). Plaintiff alleges that his due process rights were violated when Faubus and Wright arrested him for failure to register with the sex offender registry when he "was not supposed to register in Arkansas." *Id*. Plaintiff states that he lost "good jobs" because of his thirteen (13) month incarceration. *Id*. With respect to the official capacity claim, when asked to describe the acts and omissions of the Defendants that form the basis of the custom or policy that Plaintiff believes caused the violation of his constitutional rights, Plaintiff states the Defendants "[d]id not follow proper procedures, if trained properly the Detectives would not go against policy. Detective Faubus, Detective Wright abused their authority." *Id*. at 5.

Plaintiff's second claim is for "defamation of character." (ECF No. 12 at 5). Plaintiff names Detective Faubus, Detective Wright, and Detective Wilson, in both their official and personal capacities, as Defendants to this claim. Plaintiff alleges that his due process rights were violated from April 25, 2018, to present, because Defendants "going against Arkansas law" had him register as a sex offender. *Id*. Plaintiff further states the Defendants, "put me on the web so anyone can see that I have to register as it is a current conviction ... 32 months of dealing with detectives messing with my everyday life." *Id*. With respect to the official capacity claim, when asked to describe the acts and omissions of the Defendants that form the basis of the custom or policy that Plaintiff believes caused the violation of his constitutional rights, Plaintiff states the Defendants "did not go by law or policy; abused their authority; did not do follow up training." *Id*. at 6.

Plaintiff's third claim is for "harassment." Plaintiff names Detective Faubus, Detective Wright, and Detective Wilson, in their official and personal capacities, as Defendants to this claim.

(ECF No. 12 at 6).  Plaintiff alleges that his due process rights were violated from April 25, 2018, "til present" by Defendants "making [him] register for 30 months, incarceration, not following policy, and abusing their authority."  *Id*. at 6.  With respect to the official capacity claim, when asked to describe the acts and omissions of the Defendants that form the basis of the custom or policy that Plaintiff believes caused the violation of his constitutional rights, Plaintiff states "due process violation 14th Sec 1, bad training, abuse of power."  (ECF No. 12 at 7).

Plaintiff seeks both compensatory and punitive damages.  (ECF No. 12 at 7).  Specifically, Plaintiff seeks "$1600.00 a day for 13 ½ months incarceration; Punitive $1,000.00 a day per pain & suffering, mental anguish, harassment, defamation of character, aggravation, $2,000,000 for putting me on the web as a sex offender (compensatory)."  *Id*.

## II.    SUMMARY OF UNDISPUTED FACTS

After reviewing the summary judgment pleadings submitted, the following material facts are not in dispute:

Scott Allen Walker ("Plaintiff") pleaded guilty to second degree rape and was sentenced to three years in the Oklahoma Department of Corrections (the "ODC") on February 18, 1992. (ECF No. 26-1 at 1).

The victim of the rape was fourteen (14) years old.  (ECF No. 26-1 at 2).

Plaintiff was released from the ODC on July 30, 1993.  (ECF No. 12 at 9).

On September 5, 2001, Plaintiff was sentenced to 240 months in federal prison after pleading guilty to robbery, in violation of 18 U.S.C. § 1951, in a case before the United States District Court for the District of Kansas.  (ECF No. 26-1 at 6-12).

Plaintiff first registered as a sex offender in Wichita, Sedgwick County, Kansas on February 19, 2015.  (ECF No. 26-1 at 13-20).

Ryan R. Hansen is employed as Program Consultant I with the Information Services Division of the Kansas Bureau of Investigation Offender Registration Unit ("KBI" "ORU") in Topeka, Kansas. Mr. Hansen reviewed KBI records regarding the Plaintiff. (ECF No. 26-1 at 13-14). Mr. Hansen stated that the Kansas Offender Registration Act, specifically K.S.A. 22-4906(k), requires registration for any person required to register under an out-of-state law. *Id*. at 13. Mr. Hansen also stated that KBI ORU's records indicate the staff contacted the Oklahoma Department of Corrections in 2015 to determine if Plaintiff was required to register in that state. *Id*. at 13-14. According to Mr. Hansen, the Oklahoma Department of Corrections indicated Plaintiff's 1992 second degree rape conviction required him to register for 10 years and that the registration duration would begin upon initial registration in Kansas. Using this information, the staff at KBI ORU set Plaintiff's registration duration at ten years, with an ending date of February 19, 2025. *Id*. at 14.

Octavia Dent is employed in the Oklahoma Department of Corrections Sex and Violent Offender Registration Unit. According to Ms. Dent, the Oklahoma Sex Offenders Registration Act would require sex offender registration if Plaintiff lived, worked, or went to school in Oklahoma due to his Oklahoma conviction for Second Degree Rape on February 20, 1992. (ECF No. 44-1). According to Ms. Dent, although Plaintiff has never registered as a sex offender in Oklahoma, if Plaintiff returns to Oklahoma, he will be required to register in Oklahoma and that registration period will be for ten (10) years from the date of registration. *Id*.

On March 30, 2017, Plaintiff was sentenced to a term of 14 months in federal prison due to a supervised release violation. (ECF No. 26-1 at 21-22). Plaintiff was released from federal prison on April 23, 2018. *Id*. at 23.

Plaintiff moved to Arkansas and registered as a sex offender on April 25, 2018.  (ECF No. 26-2 at 4-7).  Upon his registration in Arkansas, Plaintiff was designated as a Level 2 sex offender. *Id*. at 2.  Plaintiff's registration was based on his prior registration in Kansas and his 1992 second degree rape conviction in Oklahoma.  *Id*.

Plaintiff was employed at the Cotton Patch restaurant in Springdale from May of 2018 to June 18, 2018.  (ECF No. 26-2 at 9).  Plaintiff then began employment with Edwards Enterprises. *Id*.  Plaintiff contacted Defendant Faubus while he was in Texas working a job site for Edwards. *Id*.  Plaintiff met with Defendant Faubus at the SPD Criminal Investigation Division on August 8, 2018, and Plaintiff's interview with Defendant Faubus was recorded.  *Id*.  During the interview, Plaintiff admitted to receiving copies of the rules stating the requirement to register any change in employment within ten (10) days of the change.  *Id*.  Plaintiff also admitted that he had quit his job at the Cotton Patch restaurant in Springdale and had become employed at Edwards Enterprises without following the reporting requirement.  *Id*.  Following the interview with Defendant Faubus on August 8, 2018, Plaintiff was charged with Failure to Comply with the Sex Offender Registration statute, Ark. Code Ann. § 12-12-904.  *Id*.

On November 15, 2018, Plaintiff was arrested for possession of drug paraphernalia.  (ECF No. 26-2 at 16).

On September 18, 2019, Plaintiff was arrested for fleeing, theft of property, criminal mischief, and possession of drug paraphernalia.  (ECF No. 26-2 at 17-19).

Plaintiff went to the Springdale Police Department ("SPD") Criminal Investigations office on December 26, 2019, to register after getting out of jail.  (ECF No. 26-2 at 11).  Plaintiff met with Defendant Wright and told him that he wanted to move back to Wichita, Kansas, where he had also been registered as a sex offender.  *Id*. at 11-12.  At Plaintiff's request, Defendant Wright

moved Plaintiff's registration to an address in Wichita, Kansas.  *Id*. at 12.  Defendant Wright

informed Plaintiff that he would contact the Sedgwick County Sheriff's Office to notify them of

the move and that if Plaintiff did not contact them within five days, he would have an arrest warrant

issued or would arrest him on sight.  *Id*.  Defendant Wright contacted a Deputy O'Neal in Kansas,

and Deputy O'Neal said she would be looking for Plaintiff.  *Id*.  On January 27, 2020, Deputy

O'Neal notified Defendant Wright that Plaintiff had still not registered his move as a sex offender

in Kansas.  *Id*.

Plaintiff was arrested on February 22, 2020, by patrol officers after he defrauded Walmart

with some fraudulent returns of merchandise.  (ECF No. 26-2 at 12).  The charges were criminal

trespass and theft of property.  He was taken to the Washington County Jail on Defendant Wright's

probable cause for failure to report a change of address as required by the sex offender registry

law.  *Id*.

On February 24, 2020, Defendant Wright drove to the Washington County Jail and

interviewed Plaintiff.  The interview was recorded.  (ECF No. 26-2 at 12).  Defendant Wright

advised Plaintiff of his Miranda rights and Plaintiff acknowledged he understood.  Defendant

Wright asked Plaintiff why he did not go to Kansas like he said he was going to do.  *Id*.  Plaintiff

told Defendant Wright that he and another man got stranded in Coffeyville, Kansas, or just outside

that town for three days.  He said that he then came back to Springdale.  *Id*. at 13.  Plaintiff

explained that following his return to Springdale he lived on the streets, in and out of many motel

rooms, and in and out of a storage unit.  *Id*.  Plaintiff also mentioned that he bought a car.  *Id*.

Defendant Wright determined the car was a red 2007 Mazda 3 with an Arkansas plate 329-YNS.

The license plate was registered to someone else for a white Chevrolet Tahoe.  *Id*.

Following the interview, Plaintiff was charged with failure to comply with the sex offender

registry and reporting requirements of Ark. Code Ann. §§ 12-12-904 and 906.  This charge was based on the Plaintiff's failure to report a correct address, a new vehicle, and a change of employment.  (ECF No. 26-2 at 13).  Plaintiff was also charged with failure to appear, possession of drug paraphernalia, fleeing in a vehicle, theft by receiving, criminal mischief in the first degree, possession of a Schedule II controlled substance, and a second charge of drug paraphernalia.  *Id*.

On October 27, 2020, Plaintiff pleaded guilty to fleeing, criminal mischief, theft by receiving, possession of a controlled substance and possession of drug paraphernalia.  He was sentenced to 24 months in the Arkansas Department of Corrections.  The charges of failure to appear and failure to register as a sex offender were nolle prossed.  (ECF No. 26-2 at 13, 15-20).

Plaintiff had been arrested on August 8, 2018, and on February 24, 2020, for failing to comply with the reporting requirements of the Arkansas sex offender registration law, but Defendant Wilson was not involved in either arrest.  (ECF No. 26-2 at 22).

Defendant Faubus was hired by the SPD on February 17, 2000, and he completed the Basic Police Training Course conducted by the Arkansas Law Enforcement Training Academy (the "Academy") on June 16, 2000.  (ECF No. 26-2 at 25).  At the time Defendant Faubus graduated from the Academy, the course consisted of 479 hours of training in various areas of police work. *Id*.  During his career with the SPD, Defendant Faubus has received continuous annual training as reflected in his record of training from the Arkansas Commission on Law Enforcement Standards and Training ("ACLEST").  *Id*. at 25, 29-40.  In addition to numerous hours of training on many subjects, Defendant Faubus received Sex Offender Protocol Training administered by the Arkansas Crime Information Center ("ACIC") on September 23, 2016, and on November 5, 2015. *Id*. at 25, 37.  Defendant Faubus also received training on Sex Offender Assessment on November 10, 2015.  *Id*.

7

Defendant Wright was hired with the SPD on May 16, 1998. (ECF No. 26-2 at 25). Before joining the SPD, Defendant Wright served as a police officer with the Prairie Grove, Arkansas Police Department. *Id*. Defendant Wright graduated from the Academy on April 22, 1994, when the Basic Police Training Course required 320 hours of training. *Id*. Defendant Wright has completed annual training as shown in his ACLEST record of training. *Id*. at 25-26, 42-53. Defendant Wright completed the Sex Offender Protocol Training administered by the ACIC on September 23, 2016. *Id*. at 26, 48. He also completed a training course on Exploring the Sexual Offender and Physical Abuser on January 28-29, 2019. *Id*. at 26, 47.

Defendant Wilson was hired by the SPD on August 5, 2007. (ECF No. 26-2 at 26). Defendant Wilson completed the Basic Police Training Course with the required 471 hours on June 6, 2008. *Id*. Defendant Wilson received extensive annual training as indicated in his ACLEST record of training. *Id*. at 26, 55-62. Defendant Wilson also completed the Exploring the Sexual Offender and Physical Abuser course on January 28-29, 2019. *Id*. at 26, 59.

The crux of Plaintiff's argument in support of his motion for summary judgment appears to be his claim that he should not have been required to register as a sex offender in Arkansas. (ECF No. 25). Defendants argue the undisputed facts show that Plaintiff has not established a constitutional violation. (ECF No. 26 at 3). Defendants alternatively argue that even if a constitutional violation occurred, the individual Defendants are entitled to dismissal of all claims pursuant to the affirmative defense of qualified immunity. *Id*. Various responses and replies have been filed with respect to the competing motions. (ECF Nos. 31, 35-37, 42-45, 52).

### III.    LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.    DISCUSSION

### A.  Plaintiff's False Arrest / False Imprisonment Claim

Plaintiff first claims his constitutional rights were violated when he was falsely arrested for failing to register as a sex offender.  Plaintiff was arrested on August 8, 2018, for failing to report a change in his employment status as required by Ark. Code Ann. § 12-12-904(a)(1)(A).  (ECF No. 26-2 at 9).  Plaintiff was also arrested on February 24, 2020, for failure to report a change of address as required by the sex offender registry law.  *Id*. at 13.  Plaintiff's constitutional claims for false arrest will be analyzed under the Fourth and Fourteenth Amendments.[1]

---

[1] In addition to asserting claims under the Fourth and Fourteenth Amendments, Plaintiff alleges at various points in his Second Amended Complaint that Defendants violated his rights under the Fifth, Sixth and Eighth Amendments.

The relevant inquiry is whether the arresting officers had probable cause to arrest the Plaintiff. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008); *see also Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010). Whether the police had probable cause at the time of Plaintiff's arrest is a question of law for the court to decide. *Fisher*, 619 F.3d at 816. "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id*. (quoting *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir. 2007)). "To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of arrest." *Id*. (quoting *United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003)). "As probable cause is determined at the moment the arrest is made, any later developed facts are irrelevant to the probable cause analysis for an arrest." *Id*. (quoting *Amrine*, 522 F.3d at 832).

The undisputed facts show that Plaintiff moved to Arkansas and registered as a sex offender on April 25, 2018. (ECF No. 26-2 at 4-7). Plaintiff's registration was based on his prior registration in Kansas and his 1992 second degree rape conviction in Oklahoma. *Id*. at 2.

Under Arkansas law, a sex offender is required to "report in person a change of address, employment, education, or training ..." Ark. Code Ann. § 12-12-904(a)(1)(A)(ii). Plaintiff was employed at the Cotton Patch restaurant in Springdale, Arkansas from May 2018 to June 18, 2018. (ECF No. 26-2 at 9). Plaintiff quit his job at the Cotton Patch and began employment with Edwards Enterprises. *Id*. While Plaintiff was in Texas working at a job site for Edwards, he contacted Defendant Faubus. *Id*. Defendant Faubus informed Plaintiff that he was required by law to come

---

Neither the Fifth, Sixth, nor Eighth Amendments apply to Plaintiff's false arrest claims. Accordingly, the Court finds that Plaintiff has failed to state a claim with respect to these rights.

in person and register his change of employment within ten (10) days of the change. *Id*.

Plaintiff met with Defendant Faubus at the SPD Criminal Investigation Division on August 8, 2018. (ECF No. 26-2 at 9). Plaintiff was read his Miranda rights and interviewed by Defendant Faubus. Plaintiff admitted to receiving copies of the rules stating the requirement to register any change in employment within ten (10) days of the change. Plaintiff also admitted that he had resigned from the Cotton Patch restaurant in Springdale and had become employed at Edwards Enterprises without following the reporting requirement. *Id*. Plaintiff was arrested by Defendant Faubus and was charged with Failure to Comply with the Sex Offender Registration statute, Ark. Code Ann. § 12-12-904. *Id*. Based on the totality of the circumstances, including Plaintiff's admissions during his interview with Defendant Faubus, probable cause was present for the arrest on August 8, 2018.

On December 26, 2019, Plaintiff came to the SPD Criminal Investigation office to register after getting out of jail. (ECF No. 26-2 at 11). Plaintiff met with Defendant Wright and advised him that he planned to move back to Wichita, Kansas, where he had also been registered as a sex offender. Upon Plaintiff's request, Defendant Wright moved Plaintiff's registration to Wichita, Kansas. *Id*. at 11-12. Defendant Wright explained that he would be in contact with the Sedgwick County Sheriff's Office to notify them of the planned move, and that Plaintiff was to contact them within five days. Plaintiff was told that if he did not contact the Sheriff's Office in Kansas within five days an arrest warrant would be issued. *Id*. at 12.

Defendant Wright was in contact with Deputy O'Neal in Kansas concerning Plaintiff during December 2019 and January 2020. (ECF No. 26-2 at 12). On January 27, 2020, Deputy O'Neal advised Defendant Wright that Plaintiff had not contacted her and had still not registered his move as a sex offender in Kansas. *Id*.

Plaintiff was arrested by Defendant Wright on February 22, 2020, by patrol officers after he defrauded Walmart with some fraudulent returns of merchandise. (ECF No. 26-2 at 12). Plaintiff was then taken to the Washington County Jail on Defendant Wright's probable cause affidavit for failure to comply with the sex offender registry requirements set forth in Ark. Code Ann. §§ 12-12-904 and 906 surrounding his intended move to Kansas. *Id*.

On February 24, 2020, Defendant Wright interviewed the Plaintiff at the Washington County Jail. (ECF No. 26-2 at 12). Although Plaintiff stated in his Second Amended Complaint that he never intended to move to Kansas, during the interview Plaintiff told Defendant Wright that on his way to Wichita[2] he got stranded in Coffeyville, Kansas, and then came back to Springdale. (ECF No. 26-2 at 12-13). Plaintiff told Defendant Wright that following his return to Springdale, he lived on the streets, in and out of motel rooms, and in and out of a storage unit. *Id*. at 13. Plaintiff further reported that he did a lot of under the table jobs in construction and that he bought a car. *Id*. Plaintiff was then charged with failure to comply with the sex offender registry and reporting requirements of Ark. Code Ann. §§ 12-12-904 and 906. These charges were based on Plaintiff's interview admissions that he failed to report a correct address, failed to report a new vehicle, and failed to report a change of employment. *Id*. Plaintiff was also charged with failure to appear, possession of drug paraphernalia, fleeing in a vehicle, theft by receiving, criminal mischief in the first degree, possession of a Schedule II controlled substance, and a second charge of drug paraphernalia. *Id*. On October 27, 2020, Plaintiff pleaded guilty to fleeing, criminal mischief, theft by receiving, possession of a controlled substance, and possession of drug

---

[2] In Plaintiff's verified Second Amended Complaint Plaintiff appears to state that he accurately reported his address in December 2019, and that he never told Defendant Wright he intended to move to Kansas. (ECF No. 12 at 17). However, based on the video of Plaintiff's February 24, 2020, interview with Defendant Wright, attached as Exhibit A to Defendant Wright's Affidavit, it is undisputed that Plaintiff admitted that he reported in December 2019 that he intended to move to Kansas. (ECF No. 26-2 at 12, and Exhibit A).

paraphernalia.  He was sentenced to 24 months in the Arkansas Department of Corrections.  The charges of failure to appear and failure to register as a sex offender were nolle prossed.  (ECF No. 26-2 at 13, 15-20).

Based on the totality of the circumstances, including Plaintiff's own admissions during his interview with Defendant Wright, probable cause existed for Plaintiff's arrest on February 24, 2020, for failure to comply with the sex offender registry requirements.

It is important to note that although Plaintiff's criminal charges for failure to comply with sex offender registry requirements and failure to appear were later nolle prossed, this is not relevant to the analysis of the existence of probable cause for his arrest or to Plaintiff's § 1983 claims in this case.  As quoted above, "probable cause is determined at the moment the arrest is made, any later developed facts are irrelevant to the probable cause analysis for an arrest."  *Fisher*, 619 F.3d at 816 (quoting *Amrine*, 522 F.3d at 832).

Defendants Faubus and Wright are entitled to summary judgment on Plaintiff's constitutional claims for false arrest/false imprisonment.[3]

### B.  Plaintiff's Defamation and Harassment Claims

Plaintiff also asserts claims for "defamation of character" and "harassment" stemming from his initial, April 25, 2018, registration in Arkansas as a sex offender.  While Plaintiff, at times, mentions other constitutional amendments in his Second Amended Complaint, he appears to base his claims on an allegation that his Due Process rights were violated when he was *improperly* required to register as a sex offender in Arkansas.

---

[3]The Plaintiff names only Defendants Faubus and Wright as Defendants to his claim for false arrest.

13

It is undisputed that Plaintiff pleaded guilty to second degree rape and was sentenced to three years in the Oklahoma Department of Corrections on February 18, 1992. (ECF No. 26-1 at 1). Plaintiff was released from the ODC on July 30, 1993. (ECF No. 12 at 9).

On September 5, 2001, Plaintiff was sentenced to 240 months in federal prison. (ECF No. 26-1 at 6-12). Plaintiff was later released on supervised release, and he registered as a sex offender in Kansas.[4] Plaintiff's registration in Kansas was based on the portion of the Kansas statute which requires registration for any person required to register under an out-of-state law. *Id.* at 13-14. Proof has been presented that prior to Plaintiff's 2015 Kansas registration, officials in Kansas verified that based on Plaintiff's 1992 conviction for second degree rape, and under existing Oklahoma law, Plaintiff would be required to register in that state. *Id.*[5]

The Arkansas Sex Offender Registration Act was enacted in 1997 and mandates the registration of any person who:

> (1) Is adjudicated guilty on or after August 1, 1997, of a sex offense, aggravated sex offense, or sexually violent offense;
> (2) Is serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt on or after August 1, 1997, for a sex offense, aggravated sex offense, or sexually violent offense;
> (3) Is acquitted on or after August 1, 1997, on the grounds of mental disease or defect for a sex offense, aggravated sex offense, or sexually violent offense;
> (4) Is serving a commitment as a result of an acquittal on or after August 1, 1997, on the grounds of mental disease or defect for a sex offense, aggravated sex offense, or sexually violent offense; or
> (5) Was required to be registered under the Habitual Child Sex Offender Registration Act, former § 12–12–901 et seq.

Ark. Code Ann. § 12–12–905(a).

---

[4] In the Kansas registration document, Plaintiff initialed certain items, including a statement where he acknowledged that he had been convicted of a crime that required registration under the Kansas Offender Registration Act. (ECF No. 26-1 at 17-18).
[5] In addition, undisputed independent proof has been submitted verifying that Plaintiff would be required to register in Oklahoma as a sex offender. (ECF No. 44-1).

Further, the Act also requires registration of "[a] sex offender who moves to or returns to this state from another jurisdiction and who would be required to register as a sex offender in the jurisdiction in which he or she was adjudicated guilty or delinquent of a sex offense." Ark. Code Ann. § 12–12–906(a)(2)(A).

It is undisputed that before moving to Arkansas, Plaintiff pleaded guilty and was convicted of a felony sex offense in Oklahoma. Undisputed proof has been submitted that, under Oklahoma law, Plaintiff would be required to register as a sex offender in that state. (ECF No. 44-1). Accordingly, Plaintiff's Arkansas registration is required by the plain language of the Arkansas law. *Cf. Williams v. State*, 91 S.W.3d 68 (2002) (holding that the Arkansas Sex Offender Registration Act applied to a person who was convicted of a sex offense in Wisconsin in 1992 and required to register as a sex offender there beginning on or after December 25, 1993).

For this reason, Plaintiff's constitutional claims based on an alleged improper sex offender registration fail, and Defendants are entitled to summary judgment on Plaintiff's claims of defamation and harassment.

**C. Qualified Immunity**

In addition to arguing that the undisputed facts show that Plaintiff has not suffered a constitutional violation, the Defendants alternatively argue that they are entitled to qualified immunity. The Court, having found that the facts do not make out a constitutional violation, finds that the Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

**D. Official Capacity**

Finally, in addition to asserting individual capacity claims, Plaintiff also states his claims

against the Defendants in their official capacities.

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Here, that means the City of Springdale, Arkansas.

"[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (cleaned up). To establish municipal liability under section 1983, the alleged constitutional violation must have resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Id.*

Plaintiff makes bare allegations with respect to his official capacity claims. He simply asserts that Defendants did "not go by law or policy" and "abused their authority." (ECF No. 12). Plaintiff further states there was "bad training" and alleges "if trained properly the Detectives would not go against policy." *Id.* To refute these bare allegations, Defendants have presented undisputed proof verifying significant relevant education and training completed by Defendants Faubus, Wright and Wilson. Having considered the proof, the Court finds that the record "shows that there is no genuine dispute as to any material fact and the [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Accordingly, Plaintiff's official capacity claims fail as a matter of law.

## IV.   CONCLUSION

For the reasons and upon the authorities discussed above, it is recommended that Plaintiff's Motion for Summary Judgment (ECF No. 25) be **DENIED**; and, that Defendants' Motion for

Summary Judgment (ECF No. 26) be **GRANTED**.[6]

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of December 2021.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

---

[6] It appears that Plaintiff intends to base each of his claims on his constitutional rights. To the extent that Plaintiff intends to pursue a claim under state law, the Court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3) (recognizing a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction").